UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
SEQUOIA HEALTHCARE SERVICES, LLC,

             Plaintiff,

        - against -

ESSEX CAPITAL CORPORATION and
RALPH IANNELLI,

             Defendants.
-------------------------------------X

**MEMORANDUM AND ORDER**

17 Civ. 6640 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Sequoia Healthcare Services sues defendants Essex Capital Corporation and Essex's CEO Ralph Iannelli over a series of related transactions gone wrong. Sequoia contends that Essex entered into a number of sale-leaseback transactions with Allcare Medical, a limited liability company of which Sequoia is a member, and that Sequoia and Essex entered into a separate agreement under which Sequoia would lend Essex $2 million that Essex would in turn use to fund Allcare. Defendants move to dismiss for failure to state a claim; the motion is granted.

I.    **Background**

    A.    **Factual Allegations[1]**

Sequoia is a member of Allcare Medical, an LLC involved in the "durable medical equipment" business. FAC ¶¶ 7-8. The

---

[1] These factual allegations are drawn from the operative First Amended Complaint, which we must accept as true for purposes of deciding this motion.

1

business relationship between Sequoia and Essex ostensibly began in June 2011, when Essex and Allcare entered into a transaction under which "Essex purchased equipment from Allcare, then leased that equipment back to Allcare pursuant to a Commercial Lease Agreement . . . in exchange for 36 equal monthly payments." FAC ¶ 9. Over the next two years, Essex and Allcare entered into several sale-leaseback transactions of similar form. FAC ¶ 10.

In late 2013, Allcare needed additional funding, and Sequoia accordingly negotiated with Essex regarding additional sale-leaseback agreements. FAC ¶¶ 11-12. During these discussions, Essex "represented to Sequoia that it would provide an additional $4 million in funding for Allcare if Sequoia agreed to lend Essex $2 million of that total." FAC ¶ 13. Following these negotiations, "Sequoia and Essex entered into an agreement whereby Sequoia would loan Essex" $2 million "to finance the purchase of equipment from Allcare pursuant to additional sale/leaseback transactions." FAC ¶ 14. Under the terms of this loan agreement, "Essex would pay interest only to Sequoia for the first two years of the loan, with the principal loan amount paid in equal installments" over the next three years, FAC ¶ 15, and Essex's repayment obligations were "unconditional and in no way dependent on Essex receiving payment from Allcare" under the sale-leaseback transactions, FAC ¶ 16.

However, Sequoia did not pay the loan amount to Essex. Rather, "[b]ecause Allcare wanted to obtain the funds as quickly as possible, Essex and Sequoia agreed that Sequoia would put the Loan proceeds directly into Allcare," FAC ¶ 17, and Sequoia in fact paid the $2 million directly to Allcare, FAC ¶ 18. Any further sale-leaseback transactions between Allcare and Essex would be executed thereafter, and Essex would not need to fund those leases. FAC ¶ 17. Allcare and Essex entered into two sale-leaseback transactions in late December 2013, FAC ¶ 20, with Essex taking title to the equipment financed with the $2 million funded by Sequoia and accepting "several monthly payments" made by Allcare pursuant to the December 2013 transactions, FAC ¶¶ 21-22.

Essex made one payment to Sequoia pursuant to the loan, corresponding to the interest due on the $2 million loan for the period from January through March 2014. FAC ¶ 24. This payment in the amount of $41,250 was made by check from Essex to Sequoia. FAC ¶ 24. The check was dated March 28, 2014, drew on an Essex account, had been signed by Iannelli, and indicated "Interest payment QTR 1" in the memo line. FAC ¶ 24 & ex. A. Following this payment, however, Essex made no further payments of either interest or principal on the loan. FAC ¶ 25.

## B. Procedural History

Sequoia filed suit in New York County Supreme Court on August 22, 2017, asserting four causes of action: (1) breach of contract;

(2) breach of the implied covenant of good faith and fair dealing;
(3) unjust enrichment; and (4) fraudulent inducement. Compl.,
Aug. 22, 2017, ECF No. 1-1.

Defendants successfully removed the case to federal court on
August 31, 2017,[2] and sought to dismiss for failure to state a
claim. In a November 3, 2017 letter (ECF No. 9), defendants
identified a number of bases for its contemplated motion, including
(1) that Sequoia's breach of contract claim was barred by the
Statute of Frauds; (2) that Sequoia failed to allege a benefit to
Essex to support an unjust enrichment claim; and (3) that Sequoia's
unjust enrichment and fraudulent inducement claims were
duplicative of its contract claims. After considering Sequoia's
November 8, 2017 response, we held a telephone conference on
November 16, 2017 in which we afforded Sequoia an opportunity to
amend its complaint in response to the purported deficiencies
identified in defendants' letter.

Sequoia filed the operative first amended complaint (FAC) on
December 8, 2017. Am. Compl., Dec. 8, 2017, ECF No. 11. The FAC
(1) added several allegations regarding jurisdiction and venue;
(2) clarified Allcare's relevance to the loan that Sequoia made to
Essex; (3) dropped the claim for breach of the implied covenant of
good faith and fair dealing; and (4) added as an exhibit the 2014

---

[2] We have jurisdiction under 28 U.S.C. §§ 1332 and 1441. All defendants
are California citizens, and while Sequoia is a citizen of a number of states,
see FAC ¶ 4, it is not a citizen of California.

check corresponding to the first interest payment due under the
loan.[3]  Defendants again moved to dismiss for failure to state a
claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  Discussion

In order to withstand a Rule 12(b)(6) motion, "a complaint
must contain sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.'"  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).   "A claim has facial
plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  Id.   While we "accept[] as
true all factual allegations in the complaint, and draw[] all
reasonable inferences in the plaintiff's favor," Barrows v.
Burwell, 777 F.3d 106, 111 (2d Cir. 2015), we "are not bound to
accept as true a legal conclusion couched as a factual allegation,"
Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).
Applying these standards, we consider in turn the three claims
that Sequoia asserts.[4]

---

[3] The initial complaint had alleged that Essex had made an interest payment
by check, but did not attach the check itself.

[4] Essex contends that New York law applies, and the parties' briefing
addresses New York law exclusively.  We will accordingly apply New York law.
See Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume
that New York law controls, and such implied consent . . . is sufficient to
establish choice of law." (omission in original) (quoting Krumme v. WestPoint
Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000))).

## A.   Breach of Contract

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'"  Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011)).  However, even where a plaintiff sufficiently alleges these elements, a breach of contract claim may still be barred by New York's Statute of Frauds, which includes section 5-701 of the General Obligations Law.  That is, though the Statute of Frauds is an affirmative defense, it may nonetheless properly be raised at the motion to dismiss stage.  See, e.g., Velez v. Sanchez, 693 F.3d 308, 331-32 (2d Cir. 2012) (affirming the Statute of Frauds-based dismissal of a breach of contract claim under Rule 12(b)(6)).

As relevant here, section 5-701 of the General Obligations Law "provides that an agreement will not be recognized or enforceable if it is not in writing and 'subscribed by the party to be charged therewith' and if the agreement '[b]y its terms is not to be performed within one year from the making thereof.'"  Guilbert v. Gardner, 480 F.3d 140, 151 (2d Cir. 2007) (alteration in original) (quoting N.Y. Gen. Oblig. Law § 5-701(a)(1)).  This provision "encompasses 'only those contracts which, by their terms, have absolutely no possibility in fact and law of full

performance within one year.'" Id. (quoting Cron v. Hargro
Fabrics, Inc., 91 N.Y.2d 362, 366 (1998)). Sequoia does not
dispute that the loan agreement cannot be performed within one
year, and indeed, the FAC alleges that the loan agreement had a
five-year duration. FAC ¶ 15.

Rather, Sequoia contends that the loan agreement falls within
an exception to the Statute of Frauds. Specifically, section 5-
701(b)(3)(d) of the General Obligations Law provides that, section
5-701(a)(1) notwithstanding, "[t]here is sufficient evidence that
a contract has been made if: . . . (d) There is a note, memorandum
or other writing sufficient to indicate that a contract has been
made, signed by the party against whom enforcement is sought or by
its authorized agent or broker." N.Y. Gen. Oblig. Law. § 5-
701(b)(3)(d). While "the statutorily required writing need not be
contained in one single document, but rather may be furnished by
piecing together other, related writings," William J. Jenack
Estate Appraisers & Auctioneers, Inc. v. Rabizadeh, 22 N.Y.3d 470,
477 (2013) (internal quotation marks omitted), "the writings must
contain all the essential terms of the purported agreement," Henry
L. Fox Co. v. William Kaufman Org., Ltd., 74 N.Y.2d 136, 141
(1989); see also James V. Aquavella, M.D., P.C. v. Viola, 17 N.Y.3d
741, 742 (2011) (per curiam) (affirming the conclusion that the
Statute of Frauds was not satisfied because "[t]he writings, taken
together, fail to contain all of the essential terms of the alleged

agreement"). That is, as Sequoia's own cited authority holds, "all of the terms of the contract 'must be set out in the various writings presented to the court, and at least one writing, the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged.'" Agosta v. Fast Sys. Corp., 136 A.D.3d 694, 695 (1st Dep't 2016) (quoting Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 55-56 (1953)).

The only writing that Sequoia has offered in support of its breach of contact claim is the March 28, 2014 check representing the first quarterly interest payment that Essex owed it, attached as Exhibit A to the FAC.[5] This check falls well short of containing "all the essential terms of the purported agreement," Henry L. Fox, 74 N.Y.2d at 141, and is therefore insufficient as a matter of law, see McDaniel v. Sangenino, 67 A.D.2d 698, 699 (2d Dep't 1979) ("A check or note must either have the essential terms of the contract written thereon or must bear references to other documents containing the contract terms and it must be signed by the party to be charged in order to constitute a sufficient memorandum under the statute."); see also Kaminer v. Wexler, 40 A.D.3d 405, 405 (1st Dep't 2007). While Sequoia contends that the check's memo notation of "Interest payment QTR 1" and the payment

---

[5] While Sequoia also presents the leases supporting the two sale-leaseback transactions into which Essex and Allcare entered in December 2013, see Hayes Decl. exs. A, ECF No. 21-2; id. ex. B, ECF No. 21-3, Sequoia does not argue that these writings supply any of the material terms of the loan agreement between Essex and Sequoia.

8

amount of $41,250 establishes that the check corresponds to quarterly interest on a loan of $2 million with an 8.25% annual interest rate, the loan amount and interest rate are hardly discernable from the face of the writing.[6] Nor are the loan amount and interest rate the only essential terms absent from the check, which also bears no indication of the term of the loan or the interest-only nature of the loan for the first two years, among other critical aspects.

The check here is therefore far less comprehensive than the writings considered in the authorities on which Sequoia relies. See E. Eur. Trading, Corp. v. Knaust, 128 A.D.3d 589, 589 (1st Dep't 2015) (identifying "email communications in which defendant acknowledged owing money" and a "$50,000 invoice" as writings supporting the contract); Strain v. Strain, 228 A.D.2d 491, 491 (2d Dep't 1996) (referring to "the defendant's handwritten and signed letter to the plaintiff and to an intermediary detailing the terms of the sale," among other writings); Oxbridge Partners, L.P. v. New England Video, Ltd., 213 A.D.2d 361, 361 (1st Dep't 1995) (referring to "a series of letters, executed proposals, and addenda").

Ackerman v. Landes, 112 A.D.2d 1081 (2d Dep't 1985), which primarily held that joint venture agreements are beyond the scope

---

[6] Defendants correctly note that not only does the check bear no indication of an 8.25% interest rate, but the FAC also does not even allege that the loan agreement provided for such a rate.

of the Statute of Frauds, is of little help to Sequoia. Though the Second Department also held that summary judgment was precluded on the alternative ground that a triable issue of fact remained as to "whether there was sufficient partial performance by the plaintiffs unequivocally referable to the agreement to remove it from the Statute of Frauds," id. at 1083, it relied on two authorities recognizing partial performance as an exception to the Statute of Frauds created by a now-repealed section of the Uniform Commercial Code, see Ballan v. Waterman, 103 A.D.2d 789, 789 (2d Dep't 1984) (discussing N.Y. U.C.C. § 8-319 (repealed 1997)); Gross v. Vogel, 81 A.D.2d 576, 577 (2d Dep't 1981) (same). Since then, "[t]he New York Court of Appeals has rebuked federal courts for incorrectly stating that the Court of Appeals had adopted [the doctrine of partial performance] as a judicially-created exception to section 5-701," Yarusi v. S. Sedghi Inc., No. 14 Civ. 7963 (NRB), 2015 WL 4772761, at *6 (S.D.N.Y. Aug. 13, 2015) (citing Messner Vetere Berger McNamee Schmetterer Euro RSCG, Inc. v. Aegis Grp. Plc, 93 N.Y.2d 229, 234 n.1 (1999)), and "state and federal courts have consistently held that part performance does not apply to cases arising under section 5-701," id. (collecting cases). The applicability of any partial performance exception to the Statute of Frauds is therefore not at issue here.

Accordingly, Sequoia's breach of contract is dismissed as barred by section 5-701 of the General Obligations Law.

**B.    Fraudulent Inducement**

Under Sequoia's theory of fraudulent inducement, Iannelli misrepresented that "Essex's performance of the Loan Agreement would be independent from Allcare's performance under the sale-leaseback transactions" (Opp'n 10).  That is, Sequoia asserts that Essex induced it to enter into the loan agreement by falsely representing Essex's intent to perform under the agreement (i.e., its intent to pay Sequoia back) regardless of whether Allcare made its monthly payments to Essex under the related sale-leaseback transactions.

To state a claim for fraud under New York law, a plaintiff generally "must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages."  Johnson, 660 F.3d at 143 (citing Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 488 (2007)).  However, in the specific context of fraud claims that are asserted alongside a breach of contract claim, such a claim does not survive if the "plaintiff fail[s] to '(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'"  Guilbert, 480 F.3d at 148 (quoting Bridgestone/Firestone Inc. v.

Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996)); see also Bezuszka v. L.A. Models, Inc., No. 04 Civ. 7703 (NRB), 2006 WL 770526, at *12 (S.D.N.Y. Mar. 24, 2006) (deriving the same rule from Bridgestone); Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1161 (S.D.N.Y. 1996) (Cedarbaum, J.) (extensively analyzing state and federal cases applying New York law). "Thus, courts in this district have consistently dismissed fraud claims predicated on allegations that defendants did not intend to meet their contractual obligations." Uni-World Capital, L.P. v. Preferred Fragrance, Inc., 43 F. Supp. 3d 236, 243 (S.D.N.Y. 2014) (Engelmayer, J.) (quoting Marriott Int'l, Inc. v. Downtown Athletic Club of N.Y.C., Inc., No. 02 Civ. 3906 (MBM), 2003 WL 21314056, at *6 (S.D.N.Y. June 9, 2003)).

Sequoia's theory of fraudulent inducement does not fit within the first or third exceptions to the general rule that a fraud claim that is duplicative of a breach of contract claim cannot be maintained. Sequoia identifies no legal duty that Essex owed it "separate and apart from the contractual duty to perform," Papa's-June Music, 921 F. Supp. at 1161, such as those arising from a fiduciary relationship, see, e.g., Bridgestone, 98 F.3d at 20. Rather, the only duty that Sequoia alleges is Essex's duty to perform under the loan agreement. The claim therefore does not fall within the first Bridgestone exception.

Nor does Sequoia argue that it seeks special damages. "'Special' or 'consequential' damages . . . seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach," Schonfeld v. Hilliard, 218 F.3d 164, 176 (2d Cir. 2000), and any demand "must be plead[ed] with particularity," Bibeault v. Advanced Health Corp., No. 97 Civ. 6026 (WHP), 2002 WL 24305, at *6 (citing Nyack Hosp. v. Empire Blue Cross & Blue Shield, 253 A.D.2d 743, 744 (2d Dep't 1998)). While Sequoia asserts, in conclusory fashion, that it "suffered damages," FAC ¶ 39, and accordingly demands "consequential, incidental and punitive damages," FAC at 7, Sequoia never pleads with particularity what specific special damages it suffered. Accordingly, the third exception is also inapplicable.

The applicability of the second exception, allowing fraud claims based on "misrepresentation[s] collateral or extraneous to the contract" to proceed, is somewhat more difficult to assess.[7] Under this exception, a plaintiff may maintain a fraud claim "where a defendant's misrepresentation induces the plaintiff to enter

---

[7] This difficulty arises at least in part because here, unlike in many cases analyzing the second Bridgestone exception, we have no written contract to analyze. See, e.g., In re Enron Corp., No. 04 Civ. 1367 (NRB), 2005 WL 356985, at *10-11 (S.D.N.Y. Feb. 15, 2005) (analyzing the terms of the contract at issue); DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 326 (S.D.N.Y. 2002) (Hellerstein, J.) (same); Four Finger Art Factory, Inc. v. DiNicola, No. 99 Civ. 1259 (JGK), 2000 WL 145466, at *5 (S.D.N.Y. Feb. 9, 2000) (same); cf. Marriott, 2003 WL 21314056, at *7 n.5 ("It is illogical to speak of a statement being 'extraneous' to that which does not exist." (quoting Alta-Medine v. Crompton Corp., No. 00 Civ. 5901 (HB), 2001 WL 428249, at *1 (S.D.N.Y. Apr. 26, 2001))).

into a contract and is distinct from the promise to perform," but "does not apply where the plaintiff alleges only that the defendant entered into an agreement that he intended to breach." Marriott, 2003 WL 21314056, at *7.

Sequoia correctly identifies that the New York law recognizes such an exception, see Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956 (1986) (per curiam) (citing Sager v. Friedman, 270 N.Y. 472, 479 (1936)), but does not explain why Essex's representation in question -- that it would perform under the loan agreement regardless of whether it received lease payments from Allcare -- is collateral or extraneous to the contract. However, as we have previously summarized, "[c]ourts in this district . . . have employed a two-stage approach to determine whether a statement was collateral or extraneous to the contract." Koch Indus., Inc. v. Hoechst AG, 727 F. Supp. 2d 199, 215 (S.D.N.Y. 2010) (citing Pfizer, Inc. v. Stryker Corp., No. 02 Civ. 8613 (LAK), 2003 WL 21660339 (S.D.N.Y. July 15, 2003), and DynCorp v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y. 2002) (Hellerstein, J.)). "Under [this] approach, the first and threshold question is whether the alleged misrepresentation is a statement of present fact," as opposed to one of future intent. Id.; see Deerfield, 68 N.Y.2d at 956. "The second, distinct question is whether the terms of the parties' agreement preclude a fraud suit on the basis of the alleged misstatement." Koch Indus., 727 F. Supp. 2d at 215. A

merger clause or an express provision barring suit, see, e.g., Intelligen Power Sys., LLC v. dVentus Techs. LLC, No. 14 Civ. 7392 (PAE), 2015 WL 3490256, at *14 (S.D.N.Y. June 2, 2015); Koch Indus., 727 F. Supp. 2d at 216, or a contractual provision bearing directly on the subject of the misstatement, see, e.g., Remuda Jet Five LLC v. Embraer-Empressa Brasileira de Aeronautica, S.A., No. 10 Civ. 8369 (NRB), 2012 WL 1142296, at *15-16 (S.D.N.Y. Mar. 27, 2012); Four Finger Art Factory, Inc. v. DiNicola, No. 99 Civ. 1259 (JGK), 2000 WL 145466, at *5 (S.D.N.Y. Feb. 9, 2000), will be sufficient to preclude a subsequent fraud claim.

Defendants' argument at the first step, that Essex represented only a future intent to perform under the agreement, does not fully acknowledge that Sequoia's allegation has an additional dimension: Essex did not simply represent that it would perform in the future, it represented that it could perform regardless of whether it received lease payments from Allcare. FAC ¶¶ 34-35. Because of this additional aspect, and drawing inferences in Sequoia's favor at this stage, see Barrows, 777 F.3d at 111, such a representation could reasonably be interpreted as one regarding Essex's present financial condition -- i.e., that it had sufficient assets and sufficient liquidity to pay interest and principal under the loan and could maintain its creditworthiness. It is accordingly more than a mere representation of a future intent to perform, and is one that could plausibly induce a party

to contract with the party making the representation. And though Sequoia does not expressly argue the point, this analysis is consistent with a broad interpretation of Sequoia's allegation that it "would have required additional security from Essex," FAC ¶ 38, absent such a representation by Essex.

Because the representation that Sequoia alleges could be considered one of present fact rather than future intent, we proceed to the second step of the analysis: "whether the terms of the parties' agreement preclude a fraud suit on the basis of the alleged misstatement." Koch Indus., 727 F. Supp. 2d at 215. Here, Sequoia alleges directly that "[t]he terms of the Loan Agreement were such that Essex's obligation to repay the Loan, plus interest, was unconditional and in no way dependent on Essex receiving payment from Allcare under the Lease Agreements," FAC ¶ 16, thereby bringing Essex's alleged misrepresentation directly within the scope of the loan agreement's contractual terms. Accordingly, Essex's alleged misrepresentation is not one that is collateral or extraneous to the contract -- it is a term of the contract itself. Sequoia's fraudulent inducement claim thus does not fall within the second Bridgestone exception, and it is therefore dismissed.

### C.    Unjust Enrichment

Turning finally to Sequoia's claim for unjust enrichment, we first address defendants' threshold argument regarding the Statute of Frauds. Defendants contend that under Snyder v. Bronfman, 13

16

N.Y.3d 504 (2009), the Statute of Frauds codified at section 5-701 of the General Obligations Law bars Sequoia's unjust enrichment claim. It does not. In _Snyder_, the New York Court of Appeals considered whether a provision of the Statute of Frauds -- section 5-701(a)(10) of the General Obligations Law, specifically -- barred "quantum meruit and unjust enrichment claims brought to recover the value of plaintiff's services in helping to achieve a corporate acquisition," _Snyder_, 13 N.Y.3d at 506. _Snyder_ considered "a contract to pay compensation for services rendered . . . in negotiating the purchase . . . of a business opportunity, business, . . . or an interest therein," which falls within subparagraph (a)(10) of section 5-701. Because subparagraph (a)(10) expressly provided that it renders void "a contract implied in fact or implied in law to pay reasonable compensation," _id._ (emphasis omitted) (quoting N.Y. G.O.L. § 5-701(a)(10)), _Snyder_ concluded that the plaintiff's unjust enrichment and quantum meruit claims failed.

Defendants' argument, which conflates two distinct subsections of the Statute of Frauds codified at section 5-701 of the General Obligations Law, wholly mischaracterizes _Snyder_. Sequoia's purported agreement with Essex falls within the Statute of Frauds because it "[b]y its terms is not to be performed within one year from the making thereof" -- subparagraph (a)(1) of section 5-701, not subparagraph (a)(10). Subparagraph (a)(1) contains no

language, corresponding to the language in subparagraph (a)(10), providing that it extends to "a contract implied in fact or implied in law." From the inclusion of such language only in subparagraph (a)(10), we may infer that the legislature did not intend for subparagraph (a)(1) to apply also to contracts implied in fact or law. The Statute of Frauds therefore does not bar Sequoia's unjust enrichment claim.

Accordingly, we turn to the merits of Sequoia's unjust enrichment claim. To plead an unjust enrichment claim, "[a] plaintiff must [allege] that (1) the other party was enriched, (2) at [plaintiff]'s expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) (alterations incorporated) (internal quotation marks omitted). "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Id. (omission in original) (quoting Paramount Film Distrib. Corp. v. State, 30 N.Y.2d 415, 421 (1972)).

"In a broad sense, this may be true in many cases, but unjust enrichment is not a catchall cause of action to be used when others fail." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012). Rather, unjust enrichment "is available only in unusual circumstances when, though the defendant has not breached a

contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," such as when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Id. Ultimately, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id.

Defendants argue that Essex could not possibly have received any benefit because the loan amount of $2 million was paid by Sequoia directly to Allcare. FAC ¶¶ 17-18. This contention is somewhat difficult to reconcile with economic common sense: if Essex in fact received no benefit whatsoever out of its dealings with Sequoia and Allcare, one would seriously question why Essex would incur the transaction costs associated therewith and undertake an obligation to pay interest. Accordingly, again accepting Sequoia's allegations as true, it is not only plausible, but likely, that Essex received some benefit entering into these transactions whereby Allcare received $2 million in funding from Sequoia with the money nominally passing through Essex. This benefit could very well be the favorable tax treatment that Sequoia suggests "upon information and belief" that Essex received (Opp'n 3). The defect in Sequoia's claim, then, is not that Essex received no benefit at all, but that the benefit it did receive was not received at Sequoia's expense. See Mandarin Trading, 16

N.Y.3d at 182. If favorable tax treatment were in fact the benefit to Essex, that benefit was be indirect and Sequoia had no entitlement to it. Cf. Randall v. Loftsgaarden, 478 U.S. 647, 663-64 (1986) (rejecting tax benefits as an offset to investment losses). Accordingly, though Sequoia has plausibly alleged that Essex "received some indirect benefit from the loan," the FAC "does not [plausibly allege] the specific and direct benefit necessary to support an unjust enrichment claim" under New York law. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

Nor does Sequoia appear to be pursuing such a theory of benefit to Essex. Rather, the FAC merely asserts in summary fashion that Essex received a benefit from these transactions, FAC ¶¶ 41-43, and does not identify with any specificity what benefit Essex received. The favorable tax treatment that Essex may have received could constitute a benefit as discussed, but -- critically -- the FAC is devoid of any allegations to this effect. Rather, when pressed, Sequoia argues that "the unjust enrichment is Essex's refusal (without contractual basis) to repay the Sequoia Loan after the first interest payment" (Opp'n 9 (emphasis added)). So framed, Sequoia appears to presuppose the existence of some contract, and its unjust enrichment claim becomes a mere repackaging of its contract claim. Accordingly, it is dismissed as duplicative. See, e.g., Corsello, 18 N.Y.3d at 790.

20

## III. Conclusion

Essex's motion to dismiss is granted, and Sequoia's complaint is dismissed. Sequoia's breach of contract claim is dismissed as barred by section 5-701(a)(1) of the General Obligations Law, Sequoia's fraudulent inducement claim is dismissed because it relies on an alleged misrepresentation that was not collateral or extraneous to the contract, and Sequoia's unjust enrichment claim is dismissed because it is simply a recycling of its contract claim and because Sequoia does not allege any benefit that Essex received which came at its expense.

This dismissal is with prejudice. As to the contract claim, Sequoia has been on notice of Essex's assertion of a Statute of Frauds defense since November 2017 and previously received an opportunity to amend its complaint in response. Sequoia had every reason to offer all of the writings supporting the alleged contract, all of which should have been in its possession; further leave to amend would "unhelpfully encourage counsel in future cases to forego earlier opportunities to replead once on notice of the full arguments favoring dismissal." Shapiro v. Goldman, No. 14 Civ. 10119 (NRB), 2016 WL 4371741, at *23 (S.D.N.Y. Aug. 15, 2016) (quoting Lopez v. CTPartners Exec. Search Inc., 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (Engelmayer, J.)), aff'd, 696 F. App'x 532 (2d Cir. 2017). As to the fraudulent inducement claim, leave to amend would be futile because the FAC alleges that the loan

agreement included a contractual term providing that Essex's performance obligations were not conditional on its receipt of lease payments from Allcare. See In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 519 (S.D.N.Y. 2018) ("[T]he amendment of a pleading does not make it any less an admission of the party." (quoting Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 707 (2d Cir. 1989))). And as to unjust enrichment, Sequoia has had two opportunities to state a claim that is not duplicative of its contract claim and has not done so. This fundamental substantive problem strongly suggests that further leave to amend would be futile. See Lopez, 173 F. Supp. 3d at 44 ("[W]here the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000))).

The Clerk of the Court is directed to terminate the motion pending at docket entry 17, to enter judgment in favor of defendants, and to terminate this case.

**SO ORDERED.**

Dated:    New York, New York
          July  $\mathit{II}$ , 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

22